

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 SEP 16  A 9: 00

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

| | | |
|---|---|---|
| Rod J. Rosenstein<br>*United States Attorney*<br><br>Mark W. Crooks<br>*Assistant United States Attorney* | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | DIRECT: 410-209-4867<br>MAIN: 410-209-4800<br>FAX: 410-962-0716<br>TTY/TDD: 410-962-4462<br>mark.crooks@usdoj.gov |

July 7, 2011

Charles Waechter, Esq.
1435 Sulphur Spring Road
Baltimore, MD 21227

> Re:  United States v. Larry W. Warner
>       Criminal No.  **L-11-6402**

Dear Mr. White:

This letter, together with the Sealed Supplement confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 15, 2011, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to waive indictment and plead guilty to a Criminal Information, which will charge him with one count of Enticing a Minor to Engage in Sexual Activity in violation of 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.  That on or about December 1, 2010, in the District of Maryland, the Defendant: used the mail or a facility or means of interstate commerce, that is, the telephone and/or the Internet;

        b.        that the defendant used the mail or a telephone or the Internet knowingly to attempt to persuade or induce or entice or coerce a person who the defendant believed to be under eighteen years of age, to engage in sexual activity; and

        c.        that the proposed and anticipated sexual activity was in violation of Maryland law.

### Penalties

3.        The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: a mandatory minimum of 10 years imprisonment and a maximum of life imprisonment, a $250,000 fine, followed by a term of supervised release for life. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.        The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5.        The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

        b.        If the Defendant had not consented to the filing of an information and a subsequent plea of guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1]        Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

    c. If the Defendant had not agreed to an information and was indicted and insisted upon his right to a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    e. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    f. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her

3

attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

*(BEL)*

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

   a. Pursuant to § 2G1.3(a)(3) the base offense level is a level ~~24~~ **28**.

   b. Pursuant to § 2G1.3(b)(3), 2 levels are added because the defendant used a computer in the commission of his offense. (SUBTOTAL = ~~26~~ **30**).

   c. Pursuant to § 2G1.3(b)(5), 8 levels are added because the offense involved a minor who had not attained the age of 12 years. (SUBTOTAL = ~~34~~ **38**)

   d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

   Thus, the final anticipated base offense level is ~~31~~ **35**.

8. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors,

4

Case 1:11-cr-00402-JKB   Document 6   Filed 09/16/11   Page 5 of 10

potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Plea Terms Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

10. The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of ten years (120 months) imprisonment in the custody of the Bureau of Prisons, to be followed by lifetime supervised release, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Waiver of Appeal (Rule 11(c)(1)(C)

12. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction. Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 120 months imprisonment and a term of lifetime supervised release, as well as an order of forfeiture, agreed to in this case as well as whatever fine or order of restitution that may be imposed and any issues that relate to the establishment of the advisory guidelines range. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the information or to the Court's entry of judgment against the Defendant, imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

13. The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 120 months and the government may withdraw if the Court wishes to impose a sentence below 120 months and/or the sentence does not include supervised release for life. In the event that the Court rejects the plea, but neither side wishes to withdraw from the

agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

14. If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

15. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obligations of the United States Attorney's Office

16. This Office agrees that it will not make any attempts to refer any information that it may have received during its investigation of this case to other prosecutorial or law enforcement agencies, be they federal or state offices, including but not limited to, the information regarding the Defendant's interactions with other minors. This Office reserves the right, however, to contact said agencies and offices should this Office learn of direct physical contact between the Defendant and a minor victim and/or an attempt by the Defendant to travel interstate in order to make personal contact with a minor victim.

## Obstruction or Other Violations of Law

17. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

18.  The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Forfeiture

19.  The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence and the property listed in the forfeiture count of the information. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

### Entire Agreement

20.  This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Mark W. Crooks
Assistant United States Attorney

7

      I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7-20-2011
Date

_____
Larry W. Warner

      I am Mr. Warner's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7-20-2011
Date

_____
Charlie Waechter, Esquire

8

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

1. LARRY WILLIAM WARNER ("WARNER") resided at 302 Monaco Terrace, Joppa, Maryland, 21085. WARNER is a male born in 1977 and has no children.

2. *Craigslist.com* was a centralized network of Internet communities, featuring free online classified advertisements, with sections devoted to jobs, housing, personals, services, discussion forums, among other items.

3. WARNER used the e-mail account *lordbdub@yahoo.com* to register as a user on *Craiglist.com*, using his access to post online advertisements for "casual encounter[s]" in 2010.

4. On September 15, 2010, WARNER posted an advertisement entitled "Your Daughters Panties - m4w - 30 (Harford County)" seeking a parent or sibling that was willing to provide him with a daughter's or younger sibling's underwear for WARNER to use as an implement to aid him in masturbation, which WARNER described in a sexually explicit manner. A Baltimore County detective ("the Detective") read this posting and began an online conversation with WARNER wherein the Detective represented that he was the father of an 11-year old autistic girl. WARNER and the Detective communicated back and forth over e-mail; WARNER using the e-mail address, *lordbdub@yahoo.com*.

5. On September 22, 2010, WARNER transmitted two photographs to the Detective, to wit: i) an image of four nude children (ages 5 to 11) on the beach; and ii) a nude prepubescent girl with her legs spread apart, exposing her genitalia.

6. In October and November of 2010, WARNER posted additional *Craiglist.com* advertisements using *lordbdub@yahoo.com*, wherein he offered free babysitting services for young children while also describing his own build and genitalia and sexual tendencies within the same "personal encounter" message.

7. On November 3, 2010, WARNER communicated online with the Detective and agreed to travel to a Baltimore County hotel in order to have sexual contact with the 11-year old autistic girl described above in Paragraph 4. The Defendant later stated over e-mail that he could not meet at the hotel because the Defendant's father was in the hospital.

8. On November 15, 2010, WARNER posted an additional *Craiglist.com* advertisement, requesting girl's underwear to use as an aid for masturbation, which he again described in a sexually explicit manner. The Detective responded to this online posting in an undercover capacity, describing himself as a 13 year-old girl that was willing to sell her

underwear to WARNER. WARNER agreed to this exchange and offered additional money if the supposed 13 year-old girl would remove her underwear and expose herself to him.

9. On November 30, 2010, WARNER engaged in a sexually graphic conversation with the Detective, who continued to hold himself out as 13 year-old girl. WARNER requested vaginal sexual intercourse and the performance of oral sex from the girl in exchange for money. The Detective, communicating as the 13 year-old girl, informed WARNER that she had an 8-year-old sister and another 4-year-old girl that she babysat. WARNER proposed an encounter involving sexual contact between himself and the 4 and 8-year-old girls. WARNER requested that the 13 year-old teach the 4 year-old and 8 year-old to have sexual intercourse with him.

10. On November 30, 2010, WARNER sent the Detective, who continued to work in his undercover capacity as a 13 year-old girl, two electronic photographic images, to wit: i) a photograph of a male's torso and face; and ii) a photograph of a penis which WARNER represented to be his own.

11. On November 30, 2010, WARNER communicated online with the Detective, who continued to maintain the undercover identity of a 13 year-old girl, and arranged to meet the supposed 13 year-old girl and her 8 year-old sister in Essex, Maryland at a specific location the next day. WARNER further proposed traveling to the 13 year-old girl's home after they had met, describing proposed sexual intercourse with the 13 year-old girl in the presence of her 8 year-old sister.

12. On December 1, 2010 at approximately 7:00 p.m., WARNER drove his personal vehicle to the above-described agreed-upon location and parked his car.

13. On December 2, 2010, members of the Baltimore County Police Department executed a search warrant at the home of WARNER and recovered a personal computer belonging to WARNER containing numerous images of child pornography as defined under 18 U.S.C. § 2256(8).

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

*[signature]*
Larry Williams Warner